**TRAVEL CENTRE, Appellant,**

v.

**David J. BARRAM, Administrator, General Services Administration, Appellee.**

**David J. Barram, Administrator, General Services Administration, Appellant,**

v.

**Travel Centre, Appellee.**

**Nos. 00–1054, 00–1126.**

United States Court of Appeals, Federal Circuit.

Jan. 4, 2001.

---

Arthur P. Skarmeas, Clinton & Muzyka, P.C., of Boston, MA, for appellant.

Sheryl L. Floyd, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for appellee. With her on the brief were David W. Ogden, Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Michael D. Tully, Office of General Counsel, General Services Administration, of Washington, DC.

Before MICHEL, CLEVENGER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Travel Centre appeals the August 18, 1999 quantum decision of the General Services Administration Board of Contract Appeals ("GSBCA"). *Travel Centre v. General Services Admin.*, 99–2 B.C.A. 150,712 (1999). This decision was based on the GSBCA's November 26, 1997 entitlement decision, in which the GSBCA held that General Services Administration ("GSA") breached its contract with Travel Centre. *Travel Centre v. General Services Admin.*, 98–1 B.C.A. 146,427 (1997). GSA cross-appeals the GSBCA's 1997 entitlement decision and its 1999 quantum decision. We reverse the GSBCA's entitlement decision and vacate its quantum decision.

## BACKGROUND

On April 21, 1995, GSA solicited bids for a contract to provide travel management services for federal agencies in Maine, New Hampshire, and Vermont. The solicitation indicated that the resulting contract would operate through September 30, 1996, and contained provisions for four one-year optional extensions. The successful offeror was required, under the solicitation and the resulting contract, to provide personnel, equipment, materials, supervision, and other items or services necessary to perform the management and operation of a travel office to service federal government customers. In return, the successful bidder would receive commissions for providing government travelers with reservations with airlines, hotels, and other providers of transportation and lodgings.

The cover page of the solicitation provided in bold capital letters, "INDEFINITE–DELIVERY, INDEFINITE–QUANTITY CONTRACT." The solicitation contemplated that one, two, or three separate indefinite-delivery, indefinite-quantity ("IDIQ") contracts could be awarded to provide the same travel management service. The bottom of the cover page of the solicitation expressly provided: "[T]his is an indefinite-delivery, indefinite-quantity contract with guaranteed revenue minimum of $100. This differs significantly from a requirements contract." This statement is repeated in section A of the solicitation.

The solicitation indicated that bidders "shall base their offer[s] on [fiscal year 1994] figures" for federal agency travel management services usage in the states of Maine, New Hampshire, and Vermont. The figures illustrated in the solicitation estimated business of approximately $2,500,000 per year in the three states combined. The Maine Air National Guard ("MEANG") and certain Department of Defense ("DOD") units comprised over half of the expected business in Maine. The solicitation stated in three places: "The [fiscal year 1994 tables are] for informational purposes only and [do] not represent any guarantee of sales ... and [do] not reflect any commitments received by

GSA from the federal agencies...." It further stated: "It is not known how many [f]ederal agencies will choose to utilize this contract, and it is not known how much business this contract will generate for the [c]ontractor." The solicitation also stated that: "The resultant contract(s) is a preferred source for the agency(ies) located in the outlined geographic location(s) whenever an agency(ies) determine(s) a need for commercial travel management services."

Prior to the submission of Travel Centre's final bid to GSA, Dube Travel, the incumbent GSA travel management services contractor in the state of Maine, informed GSA that MEANG and certain DoD units—which comprised over half of the expected business in Maine under the relevant solicitation—would no longer be utilizing GSA-contracted government travel management services. GSA failed to notify bidders, including Travel Centre, of this particular information.

On October 25, 1995, GSA awarded Travel Centre a contract for travel management services in the states of Maine and New Hampshire, commencing on December 1, 1995. This contract incorporated the provisions of the solicitation. To comply with an operational requirement provided in the contract, Travel Centre opened an office in Portsmouth, New Hampshire. Shortly after Travel Centre began to perform under the contract, it learned that MEANG and the DoD units would not be using its services. When expected revenues did not materialize, Travel Centre closed its Portsmouth office, but continued to service the contract from its office in Danvers, Massachusetts. From December 1, 1995 through June 26, 1996, Travel Centre realized gross sales in excess of $500,000 under the contract.

On June 21, 1996, GSA terminated the contract for default because Travel Centre did not perform adequately and because it closed its Portsmouth office contrary to the contract's requirements. On April 30, 1997, GSA changed the default termination to one for convenience of the government.

Travel Centre submitted a breach of contract claim to GSA on October 21, 1996, and appealed the GSA contracting officer's denial of the claim to the GSBCA on January 2, 1997. The GSBCA bifurcated the case into entitlement and quantum phases. In the entitlement stage, heard on November 26, 1997, the GSBCA board members split two-to-one. The majority determined, "[b]y inducing Travel Centre to base its proposal on quantities that GSA knew or should have known were overstated, GSA breached its duty to deal with Travel Centre fairly and in good faith." *Travel Centre*, 98–1 B.C.A. at 146,431. On January 23, 1998, the GSBCA denied GSA's request for reconsideration. In its quantum decision issued on August 18, 1999, the GSBCA board members again split two-to-one. That decision awarded Travel Centre $42,546 in lost business damages and accounting fees. *Travel Centre*, 99–2 B.C.A. at 150,716–17. On September 28, 1999, the GSBCA denied Travel Centre's request for reconsideration. This appeal and cross-appeal follow the preceding course of events.

## DISCUSSION

### A. Standard of Review

■ This appeal is governed by the Contract Disputes Act of 1978, which provides that "the decision of the agency board on any question of law shall not be final or conclusive...." 41 U.S.C. § 609(b) (1994 & Supp. IV 2000). Contract interpretation, a question of law, is reviewed *de novo*. *See Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 665 (Fed.Cir.1992).

### B. Entitlement and Damages

■ Both requirements contracts and IDIQ contracts provide the government purchasing flexibility for requirements that it cannot accurately anticipate. *See Stratos Mobile Networks U.S.A. v. United States*, 213 F.3d 1375, 1380 (Fed.Cir.2000). A requirements contract requires the contracting government entity to fill all of its actual requirements for supplies or ser-

vices that are specified in the contract, during the contract period, by purchases from the contract awardee. 48 C.F.R. § 16.503(a) (2000). *See also Medart, Inc. v. Austin*, 967 F.2d 579, 581 (Fed.Cir. 1992). Conversely, while an IDIQ contract provides that the government will purchase an indefinite quantity of supplies or services from a contractor during a fixed period of time, it requires the government to order only a stated minimum quantity of supplies or services. 48 C.F.R. § 16.504(a) (2000). *See also Dot Sys., Inc. v. United States*, 231 Ct.Cl. 765 (1982). That is, under an IDIQ contract, the government is required to purchase the minimum quantity stated in the contract, but when the government makes that purchase its legal obligation under the contract is satisfied. *See, e.g., Mason v. United States*, 222 Ct. Cl. 436, 615 F.2d 1343, 1346 (1980). Moreover, once the government has purchased the minimum quantity stated in an IDIQ contract from the contractor, it is free to purchase additional supplies or services from any other source it chooses. An IDIQ contract does not provide any exclusivity to the contractor. The government may, at its discretion and for its benefit, make its purchases for similar supplies and/or services from other sources.

■ Travel Centre entered into a contract with GSA that explicitly stated, within its four corners, that it was an IDIQ contract and that Travel Centre was guaranteed no more than $100 of revenue. Travel Centre admitted, in response to an interrogatory question, that it understood prior to being awarded the contract that federal agencies identified in the solicitation were not required to use its services under the contract.

Further, the contract unambiguously stated that Travel Centre was "a preferred source" of travel agency services in Maine and New Hampshire. The language "a preferred source" is not equivalent to "the exclusive source" or even to "the preferred source." Rather, the language "a preferred source" indicates that governmental agencies could, but are not required to, use Travel Centre for its travel management services needs. That is, the federal agencies in the areas covered by the IDIQ contract were free to purchase travel management services from sources other than Travel Centre.

Regardless of the accuracy of the estimates delineated in the solicitation, based on the language of the solicitation for the IDIQ contract, Travel Centre could not have had a reasonable expectation that any of the government's needs beyond the minimum contract price would necessarily be satisfied under this contract.[1]

■ In sum, when an IDIQ contract between a contracting party and the government clearly indicates that the contracting party is guaranteed no more than a non-nominal minimum amount of sales, purchases exceeding that minimum amount satisfy the government's legal obligation under the contract. Accordingly, under the terms of the IDIQ contract at issue, GSA was only required to purchase the minimum quantity stated in the contract—sales that would lead to $100 in revenue. Prior to the termination of the contract, Travel Centre realized over $500,000 of gross sales under the contract. Sales of more than $500,000 netted Travel Centre over $100 of revenue.[2] Therefore, GSA satisfied its obligation under the contract. Because GSA met the legal requirements of the contract at issue, its less than ideal contracting tactics fail to constitute a breach. Therefore, Travel Centre is not

---

1. While Travel Centre admitted in response to an interrogatory question that it recognized that federal agencies identified in the solicitation were not required to use its services under the contract, the language in the IDIQ contract alone is sufficient to conclude that Travel Centre could not have had a reasonable expectation that any of the government's needs beyond the minimum contract price would necessarily be satisfied under this contract.

2. Travel Centre argued that commissions on sales ranged from five percent to ten percent of sales dollars; whichever rate is applied to the sales, the minimum amount is satisfied.

**1320**

entitled to any legal relief, including damages.

## CONCLUSION

For the reasons set forth in this opinion, we reverse the GSBCA's entitlement decision and vacate the decision on quantum to Travel Centre.

*REVERSED and VACATED.*

## COSTS

Each party shall bear its own costs.