**VARILEASE TECHNOLOGY GROUP, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 01–5114.**

United States Court of Appeals, Federal Circuit.

May 7, 2002.

Cyrus E. Phillips, IV, of Washington, DC, argued for plaintiff-appellant.

Lisa B. Donis, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen, Director; and Deborah A. Bynum, Assistant Director.

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

LOURIE, Circuit Judge.

Varilease Technology Group, Inc. appeals from the decision of the United States Court of Federal Claims granting summary judgment in favor of the United States in Varilease's suit for breach of contract. *Varilease Tech. Group, Inc. v. United States,* No. 00–614C, slip op. at c (Fed. Cl. June 7, 2001). Because the court did not err in concluding that the United States did not breach its contract with Varilease, we affirm.

## BACKGROUND

March 1998, Varilease and the United States entered into a contract whereby Varilease was to provide maintenance for certain Unisys computers owned by the Defense Information Systems Agency ("DISA"). *Id.* at c. Its history was as follows: In late 1997, before the award of the contract, DISA had published in the Commerce Business Daily three notices indicating an intention to solicit competitive proposals, one of which would be accepted, following which the proposer would be awarded the contract. *Id.* at f. The published notices specifically stated that the contract would be an indefinite delivery, indefinite quantity ("ID/IQ") contract. *Id.* DISA issued a later Request for Proposals ("RFP") that also stated that the contract would be an ID/IQ contract, *id.* at g, covering Unisys computers owned by DISA, *id.* at f. Attached to the RFP was a table listing DISA's Unisys computer equipment, including those items that DISA presently owned and those that DISA leased (under a lease-to-own arrangement) from Unisys. Also attached was a disclaimer stating that tabulated quantities were "estimated" and noting that they were "for informational and evaluation purposes only." The RFP also stated that "[t]here is no guarantee that the quantities will not change." *Id.* at i. It further indicated that the government would be allowed to discontinue maintenance orders:

> The Government may discontinue delivery order coverage provided under a current Delivery Order at anytime prior to the expiration of the delivery order by providing the Contractor with thirty (30) days advanced written notice....

*Id.* at k.

After receipt and evaluation of the proposals that were submitted, DISA awarded contract number DCA 200–98–D–0024 to Varilease for maintenance of the agency-owned Unisys computers. The awarded contract expressly set forth its type, term, minimum, and maximum:

> This is an indefinite-delivery, indefinite-quantity (ID/IQ) contract utilizing Firm–Fixed–Price delivery/task Orders in accordance with FAR 16.500. Total orders placed against this contract shall not exceed $50,000,000.00 over a five year period (6–month base period, four 12–month and one 6–month option periods). The guaranteed minimum is $100,000 for the basic period only. There is no guaranteed minimum for the option periods, if exercised.

During the initial term, DISA placed several delivery orders valued in toto at approximately three million dollars. *Id.* at o. As of January 2001, DISA had ordered from Varilease over ten million dollars

worth of computer maintenance under the contract. *Id.* at q.

Varilease apparently had hoped that DISA would order from Varilease its entire requirements for maintenance of the agency-owned Unisys computers, including those computers leased from Unisys when DISA obtained ownership of them. However, in September 1998, DISA began replacing some of its Unisys computers, and DISA accordingly either cancelled outstanding service orders pursuant to the thirty-day discontinuance clause or stopped placing new maintenance orders. Disappointed by the lost business, Varilease filed a complaint with the Department of Defense Inspector General ("DOD/IG"), which conducted an investigation to determine whether DISA had misled Varilease before awarding the contract. *Id.* at p. The DOD/IG concluded that DISA had not misled Varilease during formation of the contract and that DISA's computer replacement plan was not in fact approved until after the award of the contract. *Id.* at p-q n. 41. No "improprieties" were found. *Id.* at p. Finally, the DOD/IG characterized the contract as an ID/IQ contract. *Id.* Varilease then complained to the contracting officer that DISA had breached the contract, but the contracting officer disagreed and denied Varilease's claim for breach. *Id.* at q.

Varilease brought suit in the Court of Federal Claims, contending that the contract was a requirements contract, rather than an ID/IQ contract, and that DISA had breached the contract by failing to provide accurate estimates of its requirements. *Id.* at x. The government disagreed, responding that the contract was an ID/IQ contract, which DISA had not breached because DISA had ordered more than the minimum amount specified by the contract. On a motion for summary judgment, the court analyzed the provisions of the contract, as well as the circumstances surrounding its formation, and concluded that the contract was indeed an ID/IQ contract, not a requirements contract. *Id.* at ee. The court accordingly granted summary judgment in favor of the United States. Varilease appeals from the judgment of the court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

▮▮▮ We review summary judgment determinations of the Court of Federal Claims *de novo. Alves v. United States,* 133 F.3d 1454, 1456 (Fed.Cir.1998). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Contract interpretation is a question of law generally amenable to summary judgment. *Textron Def. Sys. v. Widnall,* 143 F.3d 1465, 1468 (Fed.Cir.1998).

On appeal, Varilease makes two principal arguments. First, it argues that the government's actions led it to reasonably believe that the contract was intended to cover all of DISA's requirements. Second, it argues that, although the contract was an enforceable ID/IQ contract during the initial six-month base period, each option under the contract should be construed as creating a separate contract, and because each alleged separate option contract lacks a stated minimum order quantity (and hence consideration from the government), each option exercise must be found to create a requirements contract.

The government responds that the plain language of the contract shows that it is an ID/IQ contract. The government also contends that, rather than creating a separate and distinct contract, each option period is part of a unitary ID/IQ contract for its full

term, including any option periods, if exercised. Finally, the government contends that because DISA exceeded the minimum order obligation set forth in the contract, there was no breach.

■■■ We agree with the government that the contract is plainly an ID/IQ contract, and that Varilease could not have reasonably believed otherwise. Moreover, the intention of a party entering into a contract is determined by an objective reading of the language of the contract, not by that party's statements in subsequent litigation. Varilease argues that its understanding concerning the amount of maintenance it would perform if awarded the contract was based on an inventory listing of computers provided with the RFP. Whatever Varilease now asserts was its expectation, the plain language of the contract belies that expectation. The contract was an ID/IQ contract with only a minimum purchase obligation.

■■■ An ID/IQ contract differs from a requirements contract in that the former does not oblige the buyer to purchase more from the seller than a stated minimum quantity, whereas the latter obliges the buyer to buy from the seller all of its requirements of the relevant goods or services. *Travel Centre v. Barram,* 236 F.3d 1316, 1318–19 (Fed.Cir.2001). As the Court of Federal Claims correctly noted, the plain language of the contract clearly, repeatedly, and unequivocally identifies it as an ID/IQ contract rather than a requirements contract. A requirements contract must provide that the buyer will purchase all of its requirements from the seller. *Id.;* 48 C.F.R. § 16.503(a). Nowhere in the contract is there language, express or implied, obligating the government to purchase its entire requirements for maintenance of agency-owned Unisys computers. On the other hand, in addition to expressly stating that it is an ID/IQ contract, the language of the contract clearly sets forth the essentials of an ID/IQ contract, *viz.,* an obligation on the part of the government to order at least a minimum quantity of computer maintenance and an obligation on the part of the contractor to supply all of the maintenance that the government orders up to a maximum quantity. *See Travel Centre,* 236 F.3d at 1318–19. Given the clear nature of the type of contract involved, Varilease had no reasonable basis for believing that the government would order all of its requirements for relevant computer maintenance from Varilease. Rather, Varilease could have reasonably believed only that the government would purchase the minimum quantity specified in the contract.

■■■ We are also unpersuaded by Varilease's argument that the contract must be interpreted such that the option periods constitute a series of separate and distinct requirements contracts. We discern no basis in either the relevant regulations or case law for treating option periods of an ID/IQ contract as separate contracts.

The Federal Acquisition Regulations ("FAR") authorize the government to utilize an ID/IQ contract "when the Government cannot predetermine, above a specified minimum, the precise quantities of supplies or services that the Government will require." 48 C.F.R. § 16.504(b) (sometimes cited as FAR 16.504(b)). The FAR requires that an ID/IQ contract state minimum and maximum quantities to be ordered by the government; it also permits the contract to include option periods:

A solicitation and contract for an indefinite quantity must—

(i) Specify the period of the contract, including the number of options and the period for which the Government may extend the contract under each option;

(ii) Specify the total minimum and maximum quantity of supplies or services the Government will acquire under the contract; . . .

48 C.F.R. § 16.504(4)(i)-(ii); *see also* 48 C.F.R. § 17.202(b)(2) (permitting ID/IQ contracts with options). Minimum quantities are not required to be associated with each option period. On the contrary, according to subsection (ii), the "minimum . . . quantity . . . under the contract" must be specified; according to subsection (i), any option periods are part of the contract itself. The regulation refers to "extend[ing] the contract," indicating that any option periods chosen are part of the original and only contract. The contract in this case is consistent with these regulations, referring to "this . . . contract" in the singular, with parenthetical reference to option periods. We therefore conclude that Varilease's interpretation of the contract is not supported by the relevant regulatory or contractual language.

While not binding on us, the Armed Services Board of Contract Appeals has reached the same conclusion that an option period in an ID/IQ contract does not require a separate minimum quantity. In *In re Five Star Elec., Inc.*, No. 44984, 1996 WL 391458, 1996 ASBCA LEXIS 135 (July 10, 1996), the Board granted summary judgment in favor of the government, rejecting the same argument Varilease now makes:

We also see no basis for appellant's contention that, "by exercising the options, the Air Force became obligated to order at least a minimum amount of work during the option period." The only minimum quantity requirement specified in the contract is that [covering the initial period of the contract]; there are no minimum quantities specified for any of the option periods. This consideration differentiates the cases that appellant

relies upon, where there were minimum requirements for the option periods.

*Id.* at *9–10. We agree with the Board's analysis.

Varilease's reliance on *Dynamics Corp. of America v. United States*, 182 Ct.Cl. 62, 389 F.2d 424 (1968), and *Crown Laundry & Dry Cleaners, Inc. v. United States*, 29 Fed. Cl. 506 (1993), is also misplaced. Varilease cites *Dynamics*, apparently to support its contention that each exercised option term of the contract is a separate contract, and cites *Crown Laundry* as holding that a separate contract without a minimum must be a requirements contract. However, *Dynamics* does not hold that an exercised option in an ID/IQ contract becomes a requirements contract. *Dynamics* involved an ID/IQ contract, which the court characterized as an option contract in the sense that the government possessed an option to place orders with the contractor under the ID/IQ contract. 389 F.2d at 430–31. Such an order was stated to "consummate" a separate contract for the ordered goods. *Id.* at 431. However, the fact that an order pursuant to an option clause in an ID/IQ contract may lead to a separate supply contract for that order does not mean that a requirements contract is created in contradiction to the basic nature of what is clearly one ID/IQ contract.

■ Moreover, the *Crown Laundry* case is not binding on us, as it is a decision of the Court of Federal Claims. In any event, the facts of that case are distinguishable from those in the present case; the court held that the contract in that case was a requirements contract because there was no minimum quantity provision in that contract, 29 Fed. Cl. at 517, whereas the Varilease–DISA contract contains a minimum quantity provision. We thus reach the same conclusion as did the Court of Federal Claims—that the present con-

tract is an ID/IQ contract, and DISA's only obligation was to order at least the minimum quantity of relevant computer maintenance during the initial six-month term of the contract. Indisputably, DISA met that obligation.

## CONCLUSION

The court did not err in granting summary judgment that the government did not breach its contract with Varilease; we therefore

*AFFIRM.*