# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| R.L. Persons Construction, Inc. | )  ASBCA No. 60121 |
| | ) |
| Under Contract No. W912EQ-13-C-0001 | ) |

APPEARANCES FOR THE APPELLANT:    Matthew W. Willis, Esq.
        S. Leo Arnold, Esq.
         Ashley & Arnold
         Dyersburg, TN

APPEARANCES FOR THE GOVERNMENT:    Thomas J. Warren, Esq.
         Acting Engineer Chief Trial Attorney
        Ann M. Bruck, Esq.
        Edward J. McNaughton, Esq.
         Engineer Trial Attorneys
         U.S. Army Engineer District, Memphis

## OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Appellant R.L. Persons Construction, Inc. (R.L. Persons) appeals the decision of the contracting officer (CO) denying its request for an equitable adjustments related to groundwater it encountered while obtaining borrow material for the construction of a slurry trench and berms. The United States Army Corps of Engineers (Corps) has moved for summary judgment contending that there are no genuine issues of material fact as interpretation of a contract is a question of law. R.L. Persons counters that there are numerous facts that are both material and disputed and where an issue of contract interpretation raises a genuine issue of material fact, summary judgment is inappropriate (app. reply at 12). For the reasons stated below, the motion is denied.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 23 July 2012, the Corps issued Solicitation No. W912EQ-12-B-0009 (0009 solicitation) for the construction of a slurry trench and two berms along the Ohio River near Cairo, Illinois (R4, tab 3 at 21). The purpose of the project was to reinforce the levee system protecting Cairo by reducing the threat of groundwater underseepage and sand boils on the landside transition between the base of the levee and the natural ground elevation (supp. R4, tab 92 at 4597).

2. The 0009 solicitation indicated that the Corps would provide a borrow pit from which the contractor could obtain earthen materials required for the project (R4, tab 3 at 303). The borrow pit was about a half mile from the Ohio River and slurry trench site (R4, tab 4 at 367; supp. R4, tab 92 at 4599; app. resp., ex. 12, ¶ 3).

3. The 0009 solicitation contained drawing C-039, which was a hydrograph showing the annual stage fluctuation at the Cairo gage of the Ohio River (R4, tab 4 at 418). The solicitation stated that:

> The ground water for the slurry trench site will follow the Ohio River Stages (elevations) adjacent to the site. It is estimated that the Cairo gage reading plus 1 foot plus the zero elevation on the Cairo gage of 270.47 will approximate the ground water elevation at the site in general terms.

(R4, tab 3 at 320)

4. The solicitation included several boring profiles for the slurry trench site and the borrow pit area (R4, tab 4 at 369-73). The boring profiles included a legend, which indicated that the " ▽ " symbol represented groundwater surface. The legend also stated at note 2 that:

> Ground water elevations shown on the borings logs represent ground water surfaces encountered in such borings on the dates shown. Absence of water surface data on certain borings indicates that no ground water data are available from the boring but does not necessarily mean that ground water will not be encountered at the locations or within the vertical reaches of such borings.

(*Id.* at 373) None of the boring profiles indicated that groundwater surface was encountered at any depth by including the ▽ symbol (*id.* at 369-72).

5. In response to the 0009 solicitation, R.L. Persons submitted a proposal. Based upon that proposal, the Corps awarded Contract No. W912EQ-13-C-0001 (0001 contract) to R.L. Persons on 19 October 2012. The 0001 contract contained all of the above-described provisions of the 0009 solicitation. (R4, tab 3)

6. R.L. Persons began excavating materials from the borrow pit on 27 June 2013 (supp. R4, tab 91 at 4510).

2

7. At some point thereafter, R.L. Persons encountered what it claims was groundwater in the borrow pit (R4, tab 14 at 615; app. resp., exs. 8-9).

8. On 11 February 2015, R.L. Persons submitted a written claim related to the purported groundwater (R4, tab 23). On 5 May 2015, the CO denied the claim in its entirety (R4, tab 2).

9. R.L. Persons timely appealed that final decision to the Board on 6 August 2015 (R4, tab 1). R.L. Persons alleges differing site conditions, changes, and defective specifications (compl. ¶ 23).

## DECISION

*I. The Standards for Summary Judgment*

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, if the non-moving party carries the burden of proof at trial for elements of its case and fails to provide such proof, the moving party is entitled to summary judgment. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255. Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.*

*II. Differing Site Condition*

Here, there are genuine issues of material fact as to whether there was a Type I differing site condition.[1] The first element of a Type I differing site condition claim—the element that the Corps challenges in the pending motion—is that the contract must

---

[1] R.L. Persons does not respond to the Corps' demonstration that a differing site condition claim and a defective specification claim collapse into a single differing site condition claim where—as here—the alleged defect in the specifications is a failure to disclose the alleged differing site condition (gov't mot. at 13-14 (quoting *Comtrol, Inc. v. United States*, 294 F.3d 1357, 1362 (Fed. Cir. 2002)); app. resp.). Nor does R.L. Persons respond to the Corps' argument that R.L. Persons has abandoned any Type II differing site condition claim under FAR 52.236-2(a)(2) (gov't mot. at 19-20; app. resp.). Therefore, for purposes of this opinion, we only analyze R.L. Persons' Type I differing site condition claim.

3

contain positive indications of the conditions at the site. *Nova Group, Inc.*, ASBCA No. 55408, 10-2 BCA ¶ 34,533 at 170,321 (citing *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998); *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1581 (Fed. Cir. 1987)). The indication need not be explicit, but mere silence is insufficient. *Nova*, 10-2 BCA ¶ 34,533 at 170,321.

The inquiry into whether a contract contains a positive indication of the site condition is a question of contract interpretation. *Nova*, 10-2 BCA ¶ 34,533 at 170,321 (citing *H.B. Mac*, 153 F.3d at 1345; *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916-17 (Fed. Cir. 1984)). In interpreting a contract, "clear and unambiguous [contract provisions] must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (citations omitted) (en banc). "An ambiguity exists when a contract is susceptible to more than one reasonable interpretation." *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004). "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a 'zone of reasonableness.'" *NVT Tech., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999)). In deciding whether an interpretation is reasonable:

> We must seek to put ourselves in the position of appellant at the time he bid on the contract, i.e., we must seek the meaning that would be attached to the language by a reasonably intelligent bidder in the position of appellant, who would be expected to have the technical and trade knowledge of his industry and to know how to read and interpret technical engineering specifications and perform construction work in accordance with such specifications.

*Adrian L. Roberson, d/b/a Roberson Constr. Co.*, ASBCA No. 6248, 61-1 BCA ¶ 2857 at 14,915.

If, after applying the above analysis, we determine that a contract term is ambiguous, we generally read the contract against the party that drafted the contract under the doctrine of *contra proferentem. Turner Constr. Co. v. United States*, 367 F.3d 1319, 1321 (Fed. Cir. 2004). However, if the ambiguity is sufficiently apparent that there was a patent ambiguity, then the contractor must inquire as to the meaning of that contractual provision. *Id.* Failing to do so, the ambiguity will be resolved against the contractor. *Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997). Because the doctrine has the effect of relieving the government of the consequences of its own poorly drafted contract, it is applied narrowly to those cases where the ambiguity is so patent and glaring that it is unreasonable for a contractor not to inquire

4

about them. More subtle ambiguities are deemed latent and accorded an interpretation favorable to the contractor. *Id.*

Contract interpretation—particularly the issue of whether a contract is ambiguous—is a question of law that generally is amenable to summary judgment. *Varilease Tech. Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002); *NVT*, 370 F.3d at 1159. However, the determination of the reasonableness of each party's interpretation of the language may raise a question of fact precluding summary judgment. *L.C. Gaskins Constr. Co.*, ASBCA No. 58550, 15-1 BCA ¶ 36,059 at 176,087.[2] The issue of whether any ambiguity is patent or latent is a question of law that is appropriate for resolution on summary judgment. *NVT*, 370 F.3d at 1159.

Here, the Corps argues that the contract cannot reasonably be interpreted as affirmatively representing an absence of groundwater because the lack of the ⏃ symbol on the borrow pit boring profiles constituted mere silence as to the presence or absence of groundwater (gov't mot. at 14-16). However, the 0009 solicitation was not silent as to the presence or absence of groundwater in the borrow pit. Rather, boring profile legend note 2 stated that the "[a]bsence of water surface data on certain borings indicates that no ground water data are available from the boring" (SOF ¶ 4). Standing alone, the phrase "no ground water data are available from the boring" is ambiguous because there is no explanation as to why groundwater data was unavailable (*id.*). In the absence of such an explanation, there are two reasonable ways to read note 2. On the one hand, it could mean that no groundwater data was available because the borings did not sample for groundwater. On the other hand, it could mean that no groundwater data was available because the borings sampled for—but did not find—any groundwater.

---

[2] The Corps' attempt to distinguish *L.C. Gaskins* is not persuasive (gov't reply at 12). The Corps is correct that the government moved for summary judgment on its fraud affirmative defense in *L.C. Gaskins*. As a result, the ultimate issue was whether the contractor knowingly made a false statement regarding how it would dispose of paint debris. However, as we stated in *L.C. Gaskins*, "the government's motion rests upon our finding that the contract language is unambiguous in accordance with the government's interpretation" because the motion was based upon the assumption that the contract language unambiguously required all debris to be treated as regulated waste that would be disposed of in a particular manner. 15-1 BCA ¶ 36,059 at 176,086. Because *L.C. Gaskins* necessarily was addressing the issue of contract interpretation, its holding that the determination of the reasonableness of each party's interpretation of contract language may raise a question of fact precluding summary judgment is binding upon our resolution of the contract interpretation issue before us in this case.

5

Indeed, the prior sentence from note 2 suggests that the latter interpretation is correct. That sentence stated that the "[g]round water elevations shown on the borings logs represent ground water surfaces encountered in such borings on the dates shown" (SOF ¶ 4). By acknowledging the possibility that the borings might encounter groundwater, that language strongly suggests that the borings were sampling for groundwater. Because note 2 at best is susceptible to more than one reasonable interpretation, it is ambiguous.

Moreover, that ambiguity as to whether the absence of a ▽ symbol means that the borings did not sample for groundwater, or that the boring sampled for—but did not find—any groundwater is not so apparent that it imposed an obligation to inquire upon R.L. Persons. Therefore, the ambiguity was latent—not patent—and is accorded an interpretation favorable to R.L. Persons. *Triax*, 130 F.3d at 1475.

The Corps argues that the language in note 2 that the absence of water surface data on a boring profile "does not necessarily mean that ground water will not be encountered at the locations or within the vertical reaches of such borings" means that R.L. Persons could not rely upon the boring profiles as a representation of ground water levels that it actually would encounter (gov't mot. at 4, 16). However, "[g]overnmental disclaimers of responsibility for the accuracy of specifications which it authors are viewed with disdain by the courts." *Edsall Constr. Co.*, ASBCA No. 51787, 01-2 BCA ¶ 31,425 at 155,181; *see also Metcalf Constr. Co. v. United States*, 742 F.3d 984, 995-96 (Fed. Cir. 2014); *Saturn Contracting Co.*, ASBCA No. 28319, 85-1 BCA ¶ 17,728 at 88,508. Even assuming that the Corps is correct that certain narrowly drafted exculpatory clauses can qualify the differing site condition clause (gov't reply at 14 (citing *P.J. Maffei Bldg.*, 732 F.2d at 913)), exculpatory clauses that disavow responsibility for the accuracy of borings do not fall within that narrow exception. *Guy R. Allen*, ASBCA Nos. 6896, 6957, 1962 BCA ¶ 3360 at 17,292; JOHN CIBINIC, JR., JAMES F. NAGLE, AND RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS, 480-81 (5th ed. 2016).

The Corps also complains that, if it had disclosed groundwater levels on the boring profiles, then it would have subjected itself to a differing site condition claim if the actual groundwater level turned out to be different (gov't reply at 16). However, the Corps could have avoided exposure to such a claim, while still providing accurate information to contractors, by clearly stating in the legend that it did not sample for groundwater in the borrow pit area, or omitting the misleading suggestion that it was reporting whether it encountered groundwater.

Finally, the Corps points to other contractual information—such as the provision indicating that the groundwater for the slurry trench site will follow the Ohio River stages—which it argues should have created an expectation of groundwater in the borrow pit (gov't mot. at 16-18). Whether R.L. Persons reasonably should have

expected to encounter groundwater in the borrow pit area based upon the information in those provisions raises factual issues—which are genuinely in dispute—that are not appropriate to resolve on summary judgment. *L.C. Gaskins*, 15-1 BCA ¶ 36,059 at 176,087. Accordingly, the government's motion must fail.

## CONCLUSION

The Corps' motion for summary judgment is denied.

Dated: 15 March 2018

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60121, Appeal of R.L. Persons Construction, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7