ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| West Point Utilities, LLC | ) ASBCA No. 63006 |
| | ) |
| Under Contract No. N62473-19-D-1206 | ) |
| Task Order No. N62473-20-F-4216 | ) |

APPEARANCES FOR THE APPELLANT: Kirk E. Niemi, Esq.
David B. Wonderlick, Esq.
  Varela, Lee, Metz & Guarino, LLP
  Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT: Allison M. McDade, Esq.
  Navy Chief Trial Attorney
Sharon G. Hutchins, Esq.
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW ON THE
GOVERNMENT'S MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT

This appeal arises from a default termination under an Indefinite Delivery Indefinite Quantity (IDIQ) Multiple Award Construction Contract (MACC) for wet utilities construction projects. In November 2018, the Naval Facilities Engineering Command Southwest (NAVFAC or Navy) awarded West Point Utilities, LLC (West Point) a $249 million MACC covering construction, renovation, and repair projects across six western states. The dispute centers on Task Order No. N62473-20-F-4216 for water treatment plant repairs at Naval Air Facility El Centro, California, with an original completion date of September 22, 2021, later extended to May 12, 2022. Following performance delays and West Point's responses to cure and show cause notices, the contracting officer terminated West Point for default. West Point challenges this termination and seeks conversion to a termination for convenience, while also alleging additional damages and a breach of its fair opportunity to compete for future task orders.

This matter comes before us on the Navy's motion seeking dismissal of Counts I and II of West Point's complaint for lack of jurisdiction and for summary judgment upholding the default termination. We hold that: (1) the Board lacks jurisdiction over West Point's claims for monetary damages and breach of fair opportunity to compete absent certified claims to the contracting officer; and (2) genuine issues of material fact preclude summary judgment upholding the default termination. Accordingly, we grant the government's motion to dismiss for lack of

jurisdiction to entertain the allegations set forth in paragraphs 84, 85, and Count II (paragraphs 88-91) of West Point's complaint and, therefore, strike those allegations.[1]

Finally, we deny the government's motion for summary judgment and lift the stay entered pursuant to our November 29, 2021 Order. The government shall file an answer to appellant's complaint no later than 40 days from the date of this decision.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

1. On November 14, 2018, NAVFAC awarded to West Point - Granite JV, LLC (West Point) Contract No. N62473-19-D-1206, an Indefinite Delivery Indefinite Quantity (IDIQ), Small Business Multiple Award Construction Contact (MACC), for new construction, renovation, and repair of wet utilities construction projects at various Government installations located in California, Arizona, Nevada, Utah, Colorado, and New Mexico. The maximum dollar amount for all the contracts combined was $249,000,000, with an estimated task order range of $300,000 to $20,000,000, and a minimum guarantee of $5,000. (R4, tab 1 at 1)

2. The MACC contract incorporated by reference Federal Acquisition Regulation (FAR) 52.249-10, DEFAULT (FIXED PRICE CONSTRUCTION) (APR 1984) (R4, tab 1 at 25). This provision states, in relevant part:

> If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed

FAR 52.249-10(a)

3. The MACC contract established task order (TO) terms as follows: Section 00801(6)(a) provided a base year of 12 months, which the Contracting Officer (CO) could shorten if the maximum contract amount was ordered earlier. Section 801(6)(b) allowed up to four 12-month option periods for a maximum duration of 60 months or until the estimated maximum dollar value was reached, whichever

---

[1] In a footnote, appellant represents that it will submit a claim requesting an extension of time for completion of the project (app. opp'n at 2 n.1). However, the record contains no indication of this, nor is there any indication that appellant has filed a separate appeal relating to the contract at issue here.

occurred first.  The Government could exercise these options by providing written notice during the performance period, with preliminary notice required at least 60 days before contract expiration.  (R4, tab 1 at 72-73)  Paragraph 2 of Section 00803 of the MACC contract also expressly established an opportunity to compete for task orders, stating in relevant part:  "*[a]ll awardees will be given a fair opportunity to be considered for each Task Order* unless the Contracting Officer applies one of the exceptions noted below."  (R4, tab 1 at 80 (emphasis added))

4.  The MACC contract established a minimum guarantee of $5,000 to each awardee, as follows:

> The Government makes no representation as to the number of Task Orders or actual amount of work to be ordered, however, during the term of the contract, a minimum of $5,000 is guaranteed to each awardee. Contractors are not guaranteed work in excess of the minimum guarantee specified herein.

(*Id.* at 73)

5.  On November 12, 2019, NAVFAC issued Modification No. P0001 to the contract exercising option period one and extending the term of the MACC contract for one year, from November 14, 2019, through November 13, 2020 (R4, tab 2 at 38-39).

6.  On March 16, 2020, NAVFAC awarded to West Point – Granite JV, LLC Task Order No. N62473-20-F-4216, a $14,990,280, firm fixed-price, design-bid-build project for water treatment plant repairs to Basins 343-348 and 352-353 at Naval Air Facility El Centro, El Centro, California.  The task order specified a completion date of September 22, 2021.  (R4, tab 8 at 54, 56-57).

7.  Effective October 6, 2020, NAVFAC and West Point entered into a Change-of-Name Agreement to recognize the contractor's change of name from West Point - Granite JV, LLC to West Point Utilities, LLC pursuant to the July 27, 2020 amendment to West Point – Granite JV, LLC's certificate of incorporation (R3, tab 5 at 45-46).  Later, on October 27, 2020, NAVFAC issued a modification to the MACC contract, which noted the organizational change and stated that, pursuant to the Change-of-Name Agreement, NAVFAC would issue all subsequent task orders and modifications to West Point Utilities (R4, tab 4 at 43-44 (Modification No. P00003)).

8.  In a bilateral modification to the task order, on October 29, 2020, NAVFAC formally changed the contractor's name to West Point Utilities, LLC, granted a no-cost time extension of 232 days (with a new completion date of May 12, 2022) due to

3

excusable pandemic-related delays impacting financial reporting and bonding, and added a clause prohibiting contracting for certain telecommunications and surveillance equipment. (R4, tab 11 at 716-21 (Modification No. P00002))

9. On November 12, 2020, NAVFAC issued unilateral Modification No. P00005 to the MACC contract exercising option period two for the period of performance from November 14, 2020, through November 13, 2021 (R4, tab 7 at 52-53).

*Cure Notice*

10. On March 9, 2021, CO Jessica Garrett issued a Cure Notice citing numerous overdue submittals. The notice warned that failure to address these deficiencies within ten days risked termination for default. At that time, the government estimated West Point was 99 days behind schedule. (R4, tab 15 at 731)

11. On March 19, 2021, West Point responded to the cure notice. West Point acknowledged the project delays, but questioned the need for the cure notice, proposing instead a revised schedule to meet and requesting weekly collaborative meetings to address the underlying causes of delay. West Point blamed the delays on limitations of the Electronic Construction Management System (eCMS)[2] hindering submittal reviews, differing interpretations of contract requirements regarding pre-construction environmental mitigation, and an inefficient submittal review process requiring excessive revisions. (R4, tab 16 at 735-42).

12. The Navy declined to hold weekly meetings involving all NAVFAC stakeholders as requested in West Point's March 19, 2021 letter. Although a Navy engineering technician intermittently attended West Point's weekly quality control meetings, the Navy did not notify West Point in advance of his attendance. In addition, NAVFAC contracting personnel never held a formal meeting with West Point. (App. opp'n, ex. A, Alley decl. ¶¶ 5-6).

---

[2] NAVFAC eCMS is a "web-based, enterprise project collaboration tool to improve post-award management of schedules, RFIs, designs, and submittals." It is provided by the Navy at no cost to contractor users associated with a project. See https://www.navfac.navy.mil/Directorates/Planning-Design-and-Construction/About-Us/Planning-Design-and-Construction -Documents/Electronic-Construction-Management-System-eCMS/, last visited August 27, 2025.

*Show Cause Notice*

13.  On April 14, 2021, Ms. Garrett issued a show cause notice to West Point. The notice informed West Point that the government was considering terminating the task order for default due to ongoing performance issues, which remain unresolved following the March 9, 2021 cure notice.  The show cause notice estimated a current delay of 86 calendar days, reflecting an improvement of 13 days since the March 9, 2021 cure notice.  The show cause notice blamed the delay on delinquent and inadequate pre-construction submittals.  Although the Navy conceded that it had approved 21 of the 23 required submittals, the Navy blamed West Point's quality control for the need to conduct 54 submittal reviews for the submittals, with several critical submittals, including the schedule, repeatedly being disapproved for not conforming to contract requirements.  (R4, tab 17 at 743)

14.  The show cause notice detailed West Point's alleged failure to meet contract requirements related to schedule, quality control, safety, and project management, including an unrealistic schedule, numerous disapproved submittals, unauthorized mobilization of a job site trailer, inadequate safety documentation, and lack of response to prior notices.  West Point was given 10 calendar days to respond with any justification for these failures, with non-response considered an admission of fault, and was advised that liquidated damages of $2,919 per calendar day would be assessed.  (R4, tab 17 at 744-46)

15.  West Point responded on April 23, 2021.  West Point disagreed with many of the assertions in the show cause notice and claimed that it omitted key facts.  West Point attributed its initial delays to Granite Construction's withdrawal from the joint venture and the contracting officer's insistence that West Point form a new LLC to perform the work.  West Point acknowledged that two of the 23 pre-construction submittals remained outstanding, but asserted they were either in the government's possession or subject to other agencies' jurisdiction.  West Point placed significant blame on NAVFAC's eCMS system for causing delays and inefficiencies in the submittal process, arguing that technical issues and the government's piecemeal review process led to multiple resubmissions.  West Point also contended that the COVID-19 pandemic impacted subcontractor availability and material costs and contributed to delays.  (R4, tab 18 at 748-51)

16.  While acknowledging a current projected completion date two months behind schedule, West Point stated that it could "control its means and methods through acceleration and concurrent work which will enable it to complete the work under this Task Order within the time frame shown in the approved baseline schedule" (*id.* at 751).  West Point further stated that it "remains committed to working with the Government towards the successful completion of the work under this Task Order," and that it was "ready, willing and able to complete this project" (*id.*).

5

17.  In order to get the project back on schedule, West Point retained additional management personnel and retained an additional subcontractor, Spencer Construction (app. opp'n, ex. A, Alley decl. ¶ 9).

*Termination for Default*

18.  On May 27, 2021, Ms. Garrett issued to West Point a Notice of Termination for Default – Contracting Officer's Final Decision.  The decision formally terminated the contract for default, citing failures in schedule, quality control, safety, and project management as detailed in the prior show cause notice.  (R4, tab 19 at 753) The government rejected West Point's explanations for the deficiencies, noting that the government had issued three more non-compliance notices since the show cause notice.  The CO stated that, since the show cause notice, West Point's failures continued, including "failing to provide daily reports in a timely manner," performing work "without a Site Safety and Health Officer (SSHO), Quality Control Manager, nor named Activity Hazard Analyses (AHA) competent person onsite," and repeatedly "failing to perform Quality Control (QC) requirements" (*id*. at 755).  The CO further alleged that West Point demonstrated a "lack of understanding of the work" by planning to begin demolition of basins prior to dewatering, a critical prerequisite and that demolition activities prior to dewatering could have caused "unstable ground conditions" and "catastrophic loss of facility" (*id.*).  The CO argued this oversight, missed due to deficient QC meetings, risked "injury to construction workers" and "NAVFAC mission stoppage" (*id.*).  Finally, the letter outlined West Point's appeal rights (*id*. at 756).

19.  On June 16, 2021, the CO issued Modification No. P00003 to the task order terminating it for default based on West Point's failure to meet contract requirements (R4, tab 12 at 722-23).

20.  On July 21, 2021, a different CO, Tina Collins, sent a notice of intent to not exercise option period three.  The notice further stated that the government would not be soliciting additional work from West Point during the remainder of option period two.  The notice stated in relevant part:

> In accordance with the contract clause FAR 52.217-9 entitled Option to Extend the Term of the Contract (MAR 2000), it is the Government's unilateral right whether to exercise the option under the subject contract. The purpose of this letter is to inform you that the Option Period Three for this contract will not be exercised. Also, the Government will not be soliciting any new work to

6

West Point Utilities LLC during the current Option Period Two, which will expire on November 13, 2021.[3]

21. On August 20, 2021, West Point timely appealed the termination to the Board, which was docketed as ASBCA No. 63006.

22. On September 24, 2021, West Point filed its complaint, listing two counts as follows:

COUNT I
(Conversion of Termination for Default to
Termination for Convenience)

* * *

82. As detailed above, West Point Utilities cured any alleged defaults cited by NAVFAC and submitted all required submittals. NAVFAC identified 23 required submittals but also admitted that, at a minimum, 21 of the 23 submittals had been approved by NAVFAC prior to the termination for default.

83. West Point Utilities thus was not in default at the time of termination for the causes identified by NAVFAC.

84. Additionally, West Point Utilities was entitled to extensions of time for excusable delays, as provided by FAR 52.249-10(b), including for delays related to NAVFAC's non-functional eCMS system, COVID-19, and other issues to be proven at trial.

85. As a result of NAVFAC's improper default termination, West Point Utilities has incurred $540,863.91 in damages it had to pay to Harco, its surety, to reimburse Harco for the costs it paid to NAVFAC under the tender agreement. West Point Utilities is entitled to recoup these costs from NAVFAC in addition to West Point Utilities termination for convenience costs

---

[3] This document was not included in the Rule 4 file but was provided by West Point as Exhibit B to its notice of appeal.

## COUNT II
### (Breach of Fair Opportunity to Compete)

* * *

88. NAVFAC's refusal to allow West Point Utilities to participate in future solicitations prior to the expiration of the second option period and rescinding of a solicitation previously sent to West Point Utilities violates IDIQ Contract Section 00803 (Task Order Issuance Procedures), Paragraph 2 (Competition) as well as Section 00802 (Contract Administration Data), Paragraph 4 (Ombudsman).

89. As described by the ASBCA, the "fair opportunity to compete" clause is an ongoing obligation of the Government, which NAVFAC breached when it expressly refused to allow West Point Utilities to compete on future proposals. See, e.g., *Cmty. Consulting Int'l*, ASBCA No. 53489, 2002 WL 1788535 (Aug. 2, 2002), relying on *Burke Court Reporting Co.*, DOTBCA No. 3058, 97-2 BCA ¶ 20323. 90. NAVFAC breached the IDIQ Contract by denying West Point Utilities a fair opportunity to Compete and denied West Point Utilities the revenue and profit it could have earned on such projects.

90. NAVFAC breached the IDIQ Contract by denying West Point Utilities a fair opportunity to Compete and denied West Point Utilities the revenue and profit it could have earned on such projects.

91. Accordingly, NAVFAC is liable to West Point Utilities for the anticipated profits and unallocated home office overhead it could have obtained had NAVFAC afforded West Point Utilities the mandatory opportunity to bid on and perform task orders under the IDIQ Contract.

## DECISION

*The Navy's Motion to Dismiss for Lack of Jurisdiction/Motion to Strike*

The Navy moves to strike West Point's assertions, contained in Count I, ¶¶ 82-84 of the Complaint relating to its excusable delay defense and entitlement to time extensions, for lack of jurisdiction due to the failure to file a valid claim with the

contracting officer (gov't mot. at 12). Additionally, the Navy moves to strike ¶ 85 of Count I, relating to $540,863.91 in damages West Point allegedly had to pay Harco, its surety, for lack of jurisdiction for the same reason as the previously mentioned paragraphs (gov't mot. at 15). Regarding Count II, the Navy argues that West Point failed to submit a proper claim to the contracting officer relating to unspecified lost revenue, anticipated profits, and unallocated home office overhead costs related to the Navy's alleged breach of the "fair opportunity to compete clause" as asserted in ¶¶ 88-91 of the Complaint. As such, the Navy avers that the Board lacks jurisdiction over the allegations, and they should be stricken from the Complaint. (Gov't mot. at 15-16)

West Point counters that the Board has jurisdiction over all of the issues the Navy seeks to strike. Specifically, it alleges that the government is required to consider the factors listed in FAR 49.402-3(f) in its decision to terminate a contract for default, including all excuses relating to non-performance. (App. reply at 6) Thus, West Point contends that the Board should allow it the opportunity to present evidence "of both excusable delays, and the [CO's] failure to consider them, in connection with the Government's case-in-chief" (*id*. at 9-10). Additionally, West Point avers that the Board has jurisdiction to consider its "fair opportunity to compete" claim because it arises out of the government claims (e.g. the termination for default and the refusal to allow West Point to compete for further work under the contract) and a final decision was issued (*id*. at 14). The Navy responded that the notice of intent not to exercise the option was not a government claim and the contract did not guarantee West Point more than the minimum guarantee (gov't reply at 9-12).

## I. Government's Motion to Dismiss or Strike Counts I and II of Appellant's Complaint

### A. Standard of Review

West Point bears the burden of establishing the Board's jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, by a preponderance of the evidence. *Parsons Global Servs., Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,653 (citing *Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). West Point must demonstrate that it is more likely than not that the Board possesses jurisdiction to entertain this appeal.

### B. Whether the Board Possesses Jurisdiction to Entertain Appellant's Affirmative Defense of Excusable Delay

The government contends that the Board lacks jurisdiction to entertain West Point's claims of excusable delay as a defense against the termination for default without first presenting the delay claims to the CO. Therefore, the government

requests the Board dismiss the excusable delay allegations set forth in Count I, ¶¶ 82-84 of West Point's complaint.  (Gov't mot. at 12-14)

West Point's response challenges the merits of the government's decision to terminate the contract for default, contending that the government failed to adequately consider the mandatory factors set forth in FAR 49.402-3(f).  West Point argues that these factors include excusable delay and West Point's progress in curing deficiencies.  West Point further contends that the CO was aware of problems with the government's electronic submittal program and the widespread impacts of COVID-19 and that the government terminated the contract prematurely despite West Point having a significant portion of the performance period remaining.  (App. opp'n at 4-13, 20 (response to gov't SUMF ¶ 24), 28-33 (app. statement of additional material facts ¶¶ 9.b, 20.b); ex. A ¶¶ 7.b, 19.b)

Specifically, West Point argues that the FAR expressly requires the government to consider *all* excuses to non-performance, regardless of whether the contractor is entitled to a time extension for excusable delay (app. opp'n at 6).  FAR 49.402-3(f) enumerates seven factors that the CO "shall consider," including "the excuses for the failure" to perform and "any other pertinent facts and circumstances" (*id.* at 4-5).  Appellant cites to several cases holding that the CO's failure to consider these factors supports converting the default termination into one for convenience (*id.* at 5-6).

The CDA mandates that contractors submit all contract claims against the government to the CO for a decision.  41 U.S.C. § 7103(a)(1).  Consequently, the essential element of the Board's jurisdiction over a contractor's claim is the contractor's submission of a proper claim to the CO for a decision.  *JAAAT Tech. Servs., Inc.*, ASBCA No. 61792 *et al.*, 21-1 BCA ¶ 37,878 at 183,953; *Air Servs., Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,424.  A contractor is required to submit a certification to the CO for any claim exceeding $100,000.  *WIT Assocs., Inc.*, ASBCA No. 61547, 19-1 BCA ¶ 37,226 at 181,210.  The Board cannot entertain an appeal that exceeds $100,000 if the claim is not certified.  *Al Rafideen Co.*, ASBCA No. 59156, 15-1 BCA ¶ 35,983 at 175,808; *Bell Helicopter Textron Inc. & The Boeing Co.*, ASBCA No. 59561, 15-1 BCA ¶ 36,111 at 176,291.  Here, West Point admits in its opposition to the Navy's motion that it has not presented a certified claim to the CO asserting the excusable delay defense alleged in its complaint (app. opp'n at 21 (responding to gov't proposed statement of undisputed facts (gov't SUMF) ¶ 24)) (stating that "West Point does not dispute that it has not submitted claims as identified in subparagraphs (b) and (c) of this Paragraph.").

West Point's failure to properly assert a CDA claim for excusable delay bars it from raising excusable delay as an affirmative defense. Under binding Federal Circuit precedent, a contractor seeking to alter the terms of a contract – such as by obtaining a time extension – must first submit that request as a certified claim to the CO, even

10

when asserting it as an affirmative defense to a government action. In *Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed. Cir. 2010), the Federal Circuit held that "a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim *or as a defense to a government action*." *Id.* at 1331 (emphasis added). The Federal Circuit subsequently applied this rule in the context of a default termination in *Securiforce Int'l. Am., LLC v. United States*, 879 F.3d 1354 (Fed. Cir. 2018), *overruled*, *in part*, *on other grounds*, *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F4th 1364 (Fed. Cir. 2023). While holding that a defense of prior material breach need not be submitted to the CO, the court reiterated that any affirmative defense seeking a change in contract terms (like a time extension) *must* be presented to the CO first. *Securiforce*, 879 F.3d at 1363.

The Board has applied the rule set forth in *Maropakis* and *Securiforce* to bar consideration of excusable delays as affirmative defenses to a termination for default. In *ECC CENTCOM Constructors*, 18-1 BCA ¶ 37,133 at 180,711-713, the Board held that a contractor's failure to submit claims for alleged excusable delays barred consideration of those delays as affirmative defenses to a termination for default. Likewise, in *Cobeal Consulting Grp.*, ASBCA No. 63815, 25-1 BCA ¶ 38,742 at 188,340, *recon. denied*, Slip. Op. July 30, 2025, the Board dismissed appellant's claims for damages for increased costs, improper liquidated damages, and several time extensions in connection with its challenge of a termination for default, on the grounds that they were not presented to the CO for a decision. *See also DCX-CHOL Enters., Inc.*, ASBCA Nos. 61636, 61637, 19-1 BCA ¶ 37,394 at 181,800, *recon. granted in part*, 20-1 BCA ¶ 37,483 at 182,068 (striking affirmative delay and constructive change defenses for failure to present as claims before the CO); *Windamir Dev., Inc.*, ASBCA No. 63461, 24-1 BCA ¶ 38,484 at 187,044 (striking affirmative defense of delay for lack of jurisdiction).

West Point does not attempt to distinguish or contradict the legal authorities relied on by the government. Instead, West Point raises a host of arguments going to the *merits* of the government's decision to terminate the contract for default (app. opp'n at 4-12). While an agency's adherence to the factors in FAR 49.402-3(f) informs our assessment of whether a default termination constitutes an abuse of discretion, consideration of these factors is not required for a valid termination. *ECC CENTCOM Constructors*, 18-1 BCA ¶ 37,133 at 180,715 (citing *DCX, Inc. v. Perry*, 79 F.3d 132, 135 (Fed. Cir. 1996)). The regulations do not establish rights for the defaulted contractor, and a CO's failure to consider any particular factor does not necessitate converting a default termination to one for convenience. *GSC Constr., Inc.*, ASBCA Nos. 59402, 59601, 21-1 BCA ¶ 37,751 at 183,227. We acknowledge appellant's arguments concerning the FAR requirements for termination, but these contentions go the merits of the government's claim and are premature at this stage of proceedings.

Because West Point failed to submit a certified claim to the CO regarding excusable delays, as required by the CDA, the Board lacks jurisdiction to consider those delays as an affirmative defense against the government's termination for default. Based on the fact that only ¶ 84 of the Complaint alleges that West Point was entitled to extensions of time for excusable delays, we grant the government's motion to dismiss for lack of jurisdiction and to strike the allegation set forth in ¶ 84 of West Point's Complaint.

**C. Whether the Board Possesses Jurisdiction to Entertain Appellant's Request to Recoup Money Paid to its Surety**

The government next contends that the Board lacks jurisdiction to entertain West Point's claim to recoup $540,863.91 paid to its surety, as set forth in ¶ 85 of its Complaint, because West Point never submitted a certified claim for this amount to the CO for a final decision (gov't mot. at 14-15).

In response, West Point admits that it has not submitted a claim to the CO for the $540,863.91 that West Point paid to its surety (gov't mot. at 8; app. opp'n at 21 (responding to gov't SUMF ¶ 24(b)). However, West Point asserts that it is not seeking those costs at this time, but rather intends to include them in a cost proposal to be implemented if the default termination is converted to a termination for convenience (app. opp'n at 13). West Point further argues that the costs paid to its surety are evidence that the CO failed to properly consider factors set forth in FAR 49.402-3(f) before terminating the contract – specifically the urgency of the need and the time required to obtain services from other sources compared to the original contractor. According to West Point, these costs demonstrate the CO's abuse of discretion in the termination decision. *Id*.

Our analysis focuses on the allegations set forth in West Point's complaint. Paragraph 85 of the complaint states:

> As a result of NAVFAC's improper default termination,
> West Point Utilities has incurred $540,863.91 in damages
> it had to pay to Harco, its surety, to reimburse Harco for
> the costs it paid to NAVFAC under the tender agreement.
> West Point Utilities is entitled to recoup these costs from
> NAVFAC in addition to West Point Utilities termination
> for convenience costs.

West Point states in its opposition that it is not seeking these costs in this appeal and that this statement merely indicates that West Point intends to seek these costs in its termination for convenience settlement proposal (app. opp'n at 13). The government

12

contends, however, that Paragraph 85 is a claim for money damages that cannot be sustained without first being presented to a CO.

By asking for the amount of $540,863.91 "in addition to" the termination costs, paragraph 85 is a straightforward request for money damages. Because West Point admits that it has not filed a certified claim with the CO for this amount, we lack jurisdiction to entertain this allegation. Accordingly, we strike paragraph 85 of the complaint, as well the language in the final paragraph of the complaint asking the Board "to include the costs West Point Utilities reimbursed to Harco under the tender agreement…" (Compl. at 16).

We note that our decision to strike the allegations of paragraph 85 from the Complaint does not prevent West Point from relying upon these factual allegations to support its defense of the default termination, or from requesting these costs in its termination for convenience settlement proposal. Moreover, our decision does not prevent West Point from filing a claim for these costs with the CO.

## II. Whether the Board Possesses Jurisdiction to Entertain Count II of Appellant's Complaint

### A. The Parties' Arguments

The government next moves to dismiss Count II of West Point's complaint, which addresses West Point's allegations that the Navy breached West Point's IDIQ contract by refusing to allow West Point to participate in future solicitations (compl. ¶¶ 87-91). According to the government, the Board lacks jurisdiction over Count II because West Point failed to submit a claim to the CO requesting a final decision on its entitlement to unspecified amounts for lost revenue, anticipated profits, and unallocated home office overhead resulting from that alleged breach. (Gov't mot. at 15-16)

West Point argues that the Navy's July 21, 2021 notice, refusing to solicit new work from West Point during option period two, constructively terminated their IDIQ contract and constitutes a government claim. West Point contends that this permits a direct appeal to the Board without a CO claim. (App. opp'n at 14-18, 21) West Point distinguishes between the Navy's obligation to *award* work and its obligation to allow *competition* for work (app. opp'n at 15). Citing *Community Consulting Int'l*, ASBCA No. 53489, 02-2 BCA ¶ 31,940, appellant contends that the Navy's refusal to allow appellant to compete is a triable issue regarding breach of the MACC IDIQ contract and that the award of a guaranteed minimum did not relieve the government of other contractual obligations (app. opp'n at 15-16).

In its reply, the government contends its July 2021 notice informing West Point it would not solicit further work is not a "claim" under the CDA. The government bases its argument on the CDA and FAR definition of a claim, which requires a written demand or assertion as a matter of right for a specific sum of money, an adjustment or interpretation of contract terms, or other relief stemming from the contract (gov't reply at 9 (citing FAR 52.233-1). The government points to Board precedent where we have stated or found government claims include demands for refunds, corrective work orders, requests to review records, claims for excess re-procurement costs, and unilateral contract modifications reducing price (*id.* at 9-10). The government argues that the July 2021 notice is not a claim, because it did not demand a specific action like payment or contract modification, nor was it a final decision by a contracting officer. Consequently, the Navy contends that West Point should have submitted a claim to the CO before appealing to the Board. (*Id.* at 10)

## B. Refusal to Solicit Further Work is Not a Constructive Termination if the IDIQ Minimum Has Been Met

Refusal to solicit further work under an IDIQ contract does not constitute a termination, constructive or otherwise, as long as the government has fulfilled its minimum purchase obligation. It is established that once the government meets the contract minimum set in an IDIQ contract, it has no further legal obligations under the contract. *Varilease Tech. Group, Inc. v. United States*, 289 F.3d 795, 800-01 (Fed. Cir. 2002); *Travel Ctr. v. Barram*, 236 F.3d 1316, 1319 (Fed. Cir. 2001). Moreover, as the Federal Circuit held in *Varilease*, minimum quantities are not required to be associated with each option period. *Varilease*, 289 F.3d at 800; *see also RJO Enterprises, Inc.*, ASBCA No. 50981, 03-1 BCA ¶ 32,137 at 158,907-08 (holding that minimum quantities in an IDIQ contract are not required to be associated with each option period). Here, the government ordered more than the minimum quantity of $5,000 from West Point and has fulfilled its legal obligations under the MACC IDIQ contract (SOF ¶ 6). Therefore, its stated refusal to solicit additional work during the remainder of option period two does not constitute a constructive termination.

*Community Consulting* offers West Point no assistance. In that appeal, appellant submitted a claim to the CO alleging a breach of the fair opportunity to compete. *Community Consulting*, 02-2 BCA ¶ 31,940 at 157,786. At issue was whether the Board possessed jurisdiction to entertain the claim on the grounds that it was essentially a bid protest, rather than a claim of contractual breach. The Board concluded that the claim was an alleged contractual breach, not a bid protest, and that it possessed jurisdiction to entertain the claim of breach. *Id*. at 157,786-87. Crucially, the Board was not presented with the question of whether the alleged breach of the opportunity to compete was a constructive termination, because the appellant had submitted a predicate claim to the CO.

14

Here, unlike in *Community Consulting*, West Point has not submitted a claim to the CO alleging a breach of the MACC contract. Therefore, West Point cannot rely upon *Community Consulting* to support its contention that an alleged breach of the fair opportunity to complete is a constructive termination or, more generally, a government claim. Moreover, we have found no Federal Circuit or Board precedent holding that a notice refusing to solicit further work under an IDIQ contract constitutes a constructive termination of that contract.

Paragraph 2 of Section 00803 of the MACC contract expressly established an opportunity to compete for task orders, stating in relevant part: "*[a]ll awardees will be given a fair opportunity to be considered for each Task Order* unless the Contracting Officer applies one of the exceptions noted below." (SOF ¶ 3 (emphasis added) None of the contract's limited exceptions (extreme urgency, sole source justification) apply here. While West Point argues the July 21 notice breached this fair opportunity provision, this potential breach does not constitute a separate government claim. Therefore, lacking a certified claim presented to the CO pursuant to 41 U.S.C. § 7103(a)(1), we lack jurisdiction. West Point must first submit a claim to the CO to pursue this breach allegation before the Board. Accordingly, we grant the Navy's motion to strike Count II.

## C. Whether the Navy is Entitled to Summary Judgment on Count II

As an alternative argument, the Navy argues that the Board should grant summary judgment on Count II because West Point cannot state a valid claim for relief under the "Fair Opportunity to Complete Clause."

While acknowledging that the government met its contractual minimum award obligations, West Point contends this does not relieve the government of its duty to provide fair opportunity to compete for additional work (app. opp'n at 15-16). Citing *Community Consulting* and *Burke Court Reporting Co.*, DOT BCA No. 3058, 97-2 BCA ¶ 29,323, West Point argues that meeting minimum quantities under indefinite quantity contracts does not eliminate other contractual obligations, including the implied duty of good faith and express contractual requirements for fair consideration. *Id*. at 17. West Point further contends that the July 21, 2021 letter also serves as the government's final decision, as it was adverse to the contractor and appealable regardless of lacking standard appeal language, providing the Board with proper jurisdiction over the claim. *Id*. at 18.

Because we hold that Count II should be dismissed for lack of jurisdiction, we need not address the Navy's alternative argument for summary judgment. We note, however, that nothing precludes West Point from filing a claim with the CO raising the same allegations of breach of the fair opportunity to compete.

15

**III. Government's Motion for Summary Judgment on Termination for Default**

The Navy moves for summary judgment upholding the termination for default on two alternative grounds. First, the Navy contends that it has satisfied the standard in FAR 52.249-10(a) by demonstrating that the CO was "justifiably insecure about the contract's timely completion" (gov't mot. at 18 (citing *FFR-Bauelemente + Bausanierung GmbH*, ASBCA No. 52152 *et al.*, 07-2 BCA ¶ 33,627)). Specifically, the Navy contends that the CO reasonably believed West Point could not complete the project on time due to acknowledged delays, a lack of a viable recovery plan, and concerns about West Point's experience and approach to crucial tasks like dewatering (*id.* at 19-20).

Alternatively, the Navy contends that West Point failed to provide adequate assurances of timely completion in response to cure notices, offering only vague and unsubstantiated claims, and that West Point's failure amounted to an anticipatory repudiation of the contract. *Id*. at 20-21. The Navy concludes that the contract's default clause, coupled with West Point's performance failures and lack of credible assurances, warrants upholding the termination. *Id*. at 21.

**A. Legal Standard**

We grant summary judgment only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Navy, as the moving party, bears the burden of establishing the absence of any genuine factual dispute. *Mingus Constructors*, *Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). We must resolve all factual disputes and draw all reasonable inferences in favor of West Point. *Sauer Constr. LLC*, ASBCA No. 63738, 25-1 BCA ¶ 38,744 at 188,344 (citing *Mingus*, 812 F.2d at 1390-91).

Under FAR 52.249-10(a), the government may terminate a contract for default when the contracting officer reasonably believes the contractor cannot complete performance on time. The test is whether the CO held an objectively reasonable belief that there was no reasonable likelihood of timely completion. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987); *DODS, Inc.*, ASBCA Nos. 57746, 58252, 14-1 BCA ¶ 35,677 at 174,624 (citing *Lisbon*). The government cannot terminate "merely" for being behind schedule—it must demonstrate no reasonable prospect of timely completion. *Lisbon*, 828 F.2d at 765.

**B. Summary Judgment is Not Appropriate**

Because genuine disputes of material fact exist concerning the contractor's progress, recovery efforts, and the CO's consideration of FAR 49.402-3(f) factors,

summary judgment is inappropriate at this stage of the appeal. West Point has submitted evidence that, construed in the light most favorable to West Point, suggests that its performance was actually improving over time, with delays decreasing from 99 days to 86 days to just 60 days by termination. (App. opp'n, ex. A ¶ 8) With nearly a year remaining on the contract, this trajectory raises factual questions about the reasonableness of the CO's pessimistic assessment.

West Point also asserts that it resolved 21 of the 23 problematic submittals and took concrete remedial actions including hiring additional management personnel and retaining Spencer Construction as an additional subcontractor. (SOF ¶¶ 15, 17; app. opp'n at 19-20 (response to gov't SUMF ¶ 14, 32)). Whether these actions provided reasonable assurances of timely completion is a disputed factual question, a key consideration under *Lisbon*.

The parties dispute whether West Point failed to provide adequate recovery planning. West Point claims the Navy refused to meet to discuss a prepared recovery schedule, while the Navy contends no viable schedule was submitted. The parties' dispute over recovery planning goes to whether the CO reasonably concluded there was no reasonable prospect of timely completion.

In addition, West Point has raised facts suggesting that the Navy failed to consider the factors set forth in FAR 49.402-3(f). In particular, West Point alleges that the CO did not consider excusable delays as required in FAR 49.402-3(j), failed to consult with the Small Business Administration as mandated for small business contractors, and failed to evaluate the other factors in FAR 49.402-3(f) before termination. (App. opp'n at 31-32) Although the failure to consider a specific factor does not automatically invalidate a termination for default and does not confer rights on the contractor, the factors may aid the Board in evaluating the reasonableness of the CO's decision. *DCX, Inc.*, 79 F.3d at 135. Under *Lisbon*, the critical question is whether the CO's determination that timely completion was impossible was objectively reasonable. West Point's improving performance metrics, documented remedial actions, and substantial remaining contract time create genuine factual disputes about this reasonableness determination. These disputes must be resolved at trial, not on summary judgment.

## C. The Government Has Not Established Anticipatory Repudiation

To prove anticipatory repudiation, the government must show the contractor communicated a positive, definite, and unconditional intent not to perform through either: (1) a definite and unequivocal statement refusing to perform; or (2) actions constituting actual abandonment. *Highland Al Hujaz Co., Ltd.*, ASBCA No. 58243, 16-1 BCA ¶ 36,336 at 177,165 (citations omitted).

17

Either an express refusal to perform or a statement of inability to perform may constitute anticipatory repudiation. *See Danzig v. AEC Corp.*, 224 F.3d 1333, 1339-40 (Fed. Cir. 2000) (holding that the failure to provide assurances of performance is a breach justifying termination for default). For example, stating inability to perform unless the government modifies the contract constitutes anticipatory repudiation. *LKJ Crabbe Inc.*, ASBCA No. 60331, 18-1 BCA ¶ 37,193 at 181,065; *Symvionics, Inc.*, ASBCA Nos. 60335, 60612, 17-1 BCA ¶ 36,790 at 179,322 (citing *Cascade Pacific Int'l v. United States*, 773 F.2d 287, 293 (Fed. Cir. 1985)).

The Navy's anticipatory repudiation argument fails because West Point consistently expressed an intent to perform and complete on time. West Point responded to the March 9, 2021 cure notice within 10 days, proposing a revised schedule for collaborative meetings to address the underlying causes of the delay (SOF ¶ 11). West Point responded to the April 14, 2021 show cause notice within nine days, stating that it believed there were ways to "control its means and methods through acceleration and concurrent work which will enable it to complete the work under this Task Order within the time frame shown in the approved baseline schedule." (SOF ¶ 16) West Point further stated that it "remains ready, willing and able to complete this project" (*id.*). These statements demonstrate intent to complete the project on time and fall short of the required "definite" and "unequivocal" intent not to perform.

The Navy makes too much of West Point's admission in its response to the show cause notice that the current project tracked two months behind the baseline schedule (gov't reply at 16). This statement falls well short of the statements made in *Danzig*, where the contractor admitted in its response to the government's cure notice that its financial difficulties "'made it impossible . . . to predict an ultimate completion date at this time.'" 224 F. 3d at 1335, 1338. The contractor in *Danzig* further admitted that, unless its surety released funds in the project's bank account, "'it is doubtful that [we] will ever be able to complete the project.'" *Id.* Moreover, the contractor in *Danzig* reduced its work force to just two employees and failed completely to respond to the government's subsequent show cause notice within the 10-day deadline. *Id.* at 1339.

West Point, in contrast, timely responded to both the cure notice and the show cause notice (SOF ¶¶ 11, 16). It also stated that it was willing and able to complete the project and had developed a plan to do so within the original deadline (SOF ¶16). Finally, West Point took concrete steps to address the delay by retaining additional management personnel and retaining an additional subcontractor (SOF ¶ 17; app. opp'n at 19-20 (response to gov't SUMF ¶ 14)). The facts, viewed most favorably to West Point, preclude summary judgment for the Navy.

## CONCLUSION

Because West Point failed to submit claims to the CO as required by the Contract Disputes Act, ¶¶ 84, 85, and Count II (¶¶ 88-91) are dismissed without prejudice due to lack of jurisdiction.  However, the Board denies the government's motion for summary judgment on the termination for default, finding genuine issues of material fact regarding the reasonableness of the termination and anticipatory repudiation that preclude summary judgment.

Dated:  September 4, 2025

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63006, Appeal of West Point Utilities, LLC, rendered in conformance with the Board's Charter.

Dated: September 4, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals